# IN THE UNITED STATES DISTRICT COURT
## FOR THE MIDDLE DISTRICT OF NORTH CAROLINA

| | | |
|---|---|---|
| SADIA ASLAM, | ) | |
| | ) | |
| Plaintiff, | ) | |
| | ) | |
| v. | ) | 1:23cv971 |
| | ) | |
| LISA HELLER, et al., | ) | |
| | ) | |
| Defendants. | ) | |

## MEMORANDUM OPINION AND RECOMMENDATION
## OF UNITED STATES MAGISTRATE JUDGE

This case comes before the undersigned United States Magistrate Judge for a recommendation on the Motion to Dismiss (Docket Entry 5) filed by Lisa Heller, David Meale, and Antony Blinken (collectively, the "Defendants"). For the reasons that follow, the Court should grant the instant Motion.

## BACKGROUND

On November 12, 2023, Plaintiff commenced this action by filing a complaint against Defendants. (See Docket Entry 1 (the "Complaint").) According to the Complaint:

> In January 2022, Plaintiff Sadia Aslam properly filed with [the United States Citizenship and Immigration Service ("USCIS")] a[n] [I-130 immediate family member reunification] visa petition for her husband, Hamza Iftikhar. In April 2022, USCIS approved Plaintiff's husband's visa petition. Plaintiff['s] goal was . . . for her husband . . . [to] join Plaintiff in the United States. In March 2023, Plaintiff's husband, Hamza Iftikhar, was interviewed by the U.S. Consulate General in Guangzhong[, China,] in connection with the case. . . . After the interview, [Plaintiff's husband] learned that [his] case was placed in administrative processing pursuant to the Immigration and Nationality

Act ("INA") § 221(g). . . .  In July 2023, Plaintiff reached out to Congresswoman Kathy Manning . . . inquiring about the progress of the application.  [Plaintiff and her husband] were advised that the case had been placed in administrative processing, and no further updates were available.  Since the interview, Plaintiff and her husband have inquired as to the status of this visa application on numerous occasions and received no meaningful responses.

(Id. at 4-5 (parentheticals omitted).)[1]

The Complaint additionally alleges:

Defendants' failure to adjudicate Plaintiff's I-130-based visa application has . . . caused significant personal, financial, and emotional hardship. . . .  Plaintiff and her husband are struggling with depression and anxiety due to the separation and the uncertainty of when they will reunite.  This has led to Plaintiff's diagnosis of depression and anxiety, requiring therapy. . . .  Due to the 12-hour time difference, Plaintiff and her husband are unable to contact each other frequently, continuously straining their relationship and disrupting the couple's sleep, work, and study routines.  Plaintiff's mental health makes it difficult to complete everyday tasks and has started to affect her performance as a physician, which requires focus and precision. . . .  Plaintiff has incurred $15,000 in travel expenses visiting her husband . . . .

(Id. at 2-3.)

In reliance on these allegations, Plaintiff pleads three claims for relief.  First, she alleges that Defendants' delay in the adjudication of her husband's visa application violates the Administrative Procedure Act ("APA"), 5 U.S.C. § 706(1).  (See id. at 5-6.)  Next, Plaintiff seeks mandamus relief under the Mandamus Act, 28 U.S.C. § 1361, and the All Writs Act, 28 U.S.C. § 1651, for

_____

1  Docket Entry page citations utilize the CM/ECF footer's pagination.

2

the delay.  (See id. at 6-7.)[2]  Finally, Plaintiff alleges a violation of her substantive and procedural due process rights under the Fifth Amendment of the United States Constitution.  (See id. at 7.)  As relief, Plaintiff seeks an order mandating that Defendants process her husband's visa application within 15 calendar days of the Court's order or as soon as reasonably practicable, as well as an award of attorney's fees and costs.  (See id. at 8.)

Defendants have filed a "motion to dismiss [the Complaint] pursuant to Rules 12(b)(1) and 12(b)(6) of the Federal Rules of Civil Procedure."  (Docket Entry 5 at 1.)  In particular, Defendants' supporting memorandum asserts (i) that the doctrine of consular non-reviewability requires dismissal of Plaintiff's claim, (ii) the Court lacks subject matter jurisdiction over Plaintiff's claims based on Plaintiff's inability to identify a clear, non-discretionary duty that Defendants have not fulfilled, and

---

2  Although the Complaint sets out distinct APA and mandamus claims, courts have reviewed claims for unreasonable delay under the APA and mandamus claims together under the same standard.  See, e.g., Jahangiri v. Blinken, No. 23cv2722, 2024 WL 1656269, at *14 (D. Md. Apr. 17, 2024); Bagherian v. Pompeo, 442 F. Supp. 3d 87, 96 (D.D.C. 2020); see also South Carolina v. United States, 907 F.3d 742, 759 (4th Cir. 2018) ("[C]laims of unreasonable delay can be properly addressed through a mandamus proceeding.").  The parties have not advocated for treating Plaintiff's APA and mandamus claims differently at this stage.  (See Docket Entry 6 at 11 ("While there might be some theoretical daylight between APA claims of unreasonable delay seeking purely declaratory relief and Mandamus Act claims, here, the only APA claim that Plaintiff brings with respect to Defendants' conduct sounds in mandamus."); Docket Entry 8 at 1-27 (indicating the same).)

3

(iii) the elapsed time for administrative processing does not

qualify as unreasonable. (See Docket Entry 6 at 6-21.)[3] Plaintiff

has responded in opposition to the instant Motion (see Docket Entry

8) and Defendants have replied (see Docket Entry 9).

## DISCUSSION

Under the Federal Rules of Civil Procedure (the "Rules"), a

party may contest the Court's subject matter jurisdiction. See

Fed. R. Civ. P. 12(b)(1). When, as here (see Docket Entry 6 at 3),

a defendant asserts that "a complaint simply fails to allege facts

upon which subject matter jurisdiction can be based," Kerns v.

United States, 585 F.3d 187, 192 (4th Cir. 2009) (internal

quotation marks omitted), "the plaintiff, in effect, is afforded

the same procedural protection as [s]he would receive under a Rule

12(b)(6) consideration," id. (internal quotation marks omitted).

In other words, "the facts alleged in the complaint are taken as

_____

3 Although Defendants did not develop independent grounds for
dismissal of Plaintiff's constitutional claim (see Docket Entry 6
at 1-21), that claim depends, in part, on the statutory claim(s),
see Saavedra Bruno v. Albright, 197 F.3d 1153, 1163 n. 14 (D.C.
Cir. 1999) (noting that the "plaintiffs' statutory claims had to be
reviewed in order for the court to reach their constitutional
claims" (citing Abourezk v. Reagan, 785 F.2d 1043, 1062 n.1 (D.C.
Cir. 1986) ("The two sets of claims [statutory and constitutional],
however, cannot so easily be broken apart. A court faced with this
constitutional challenge must first construe the statutes to
determine whether they authorize what was done, and if so, whether
they pass constitutional muster. . . . When actions of the
executive branch are challenged as violative of constitutional
rights, the issue of the scope and source of executive authority
necessarily becomes part of the analysis in which a court is
required to engage."))). Accordingly, a dismissal of the statutory
claim(s) necessarily defeats the constitutional claim.

4

true, and the motion must be denied if the complaint alleges sufficient facts to invoke subject matter jurisdiction." Id.

Because subject matter jurisdiction constitutes a threshold question, see Steel Co. v. Citizens for a Better Env't, 523 U.S. 83, 94 (1998), the Court should address that issue first, see, e.g., Zadeh v. Blinken, No. 23cv3721, 2024 WL 2708324, at *4 (N.D. Ill. May 20, 2024) ("Subject matter jurisdiction always comes first."); see also Penland v. Carolina First Bank, Civ. Action No. 6:07-3109, 2008 WL 1736858, at *3 (D.S.C. Apr. 15, 2008) ("Although the absence of subject matter jurisdiction may be raised at any time during the case, determining jurisdiction at the outset of the litigation is the most efficient procedure."). In support of the instant Motion, Defendants assert that the Court lacks subject matter jurisdiction because Plaintiff has not alleged that the relevant government agency possesses a non-discretionary duty to act. (See Docket Entry 6 at 9-11.) More particularly, Defendants maintain that "Plaintiff cannot identify a clear, non-discretionary duty for a consular officer to adjudicate, let alone re-adjudicate, any specific visa application." (Id. at 9-10.)

"Under [Section] 706, [the Court] may only compel 'agency action' that has been 'unlawfully withheld or unreasonably delayed.'" Gonzalez v. Cuccinelli, 985 F.3d 357, 365 (4th Cir. 2021) (citing 5 U.S.C. § 706(1)). Moreover, "a [Section] 706 claim 'can proceed only where a plaintiff asserts that an agency failed

5

to take a *discrete* agency action that it is *required to take*.'" <u>Id.</u> at 366 (quoting <u>Norton v. South Utah Wilderness All.</u>, 542 U.S. 55, 64 (2004)) (emphasis in original). Accordingly, Section 706 "empowers a court only to compel an agency to perform a ministerial or non-discretionary act." <u>Norton</u>, 542 U.S. at 64. The Court cannot direct "even discrete agency action that is not demanded by law," <u>id.</u> at 65; rather, "claims must be dismissed for a lack of jurisdiction, . . . [where] the agency was not required to [act]," <u>Gonzalez</u>, 985 F.3d at 366.

Plaintiff contends "Defendants' nondiscretionary duty arises from the APA . . . and from the INA." (Docket Entry 8 at 10.) The APA provides that, "within a reasonable time, each agency shall proceed to conclude a matter presented to it." 5 U.S.C. § 555(b). The INA, in turn, requires that "[a]ll immigrant visa applications shall be <u>reviewed and adjudicated</u> by a consular officer." 8 U.S.C. § 1202(b) (emphasis added). Consistent with that directive, by regulation, "[c]onsular officers must ensure that the [online or paper visa application] is properly and promptly processed in accordance with the applicable regulations and instructions." 22 C.F.R. § 41.106. INA regulations also state that, once "a visa application has been properly completed and executed in accordance with the provisions of the INA and the implementing regulations, the consular officer <u>must</u> issue the visa, refuse the visa, or, . . . discontinue granting the visa." 22 C.F.R. § 41.121(a)

6

(emphasis added); see also 22 C.F.R. § 42.81 ("[T]he consular officer must issue the visa, refuse the visa under INA 212(a) or 221(g) or other applicable law or . . . discontinue granting the visa." (emphasis added)).

As a result, Defendants have a discrete, nondiscretionary duty to grant or to refuse visa applications. See Lovo v. Miller, No. 23-1571, 2024 WL 3280895, at *10 (4th Cir. July 3, 2024) (holding that "the presence of 'unmistakably mandatory' language, such as the word[s] 'will' [or 'must'], can provide sufficient evidence of the unequivocal command required for [the Court] to hold that an agency is compelled to act" (citing Ewell v. Murray, 11 F.3d 482, 488 (4th Cir. 1993))); see also Patel v. Reno, 134 F.3d 929, 932-33 (9th Cir. 1997) (construing 22 C.F.R. § 42.81 as requiring consular office to act on visa applications and finding "the consulate had a duty to act" on visa application at issue); Yaghoubnezhad v. Stufft, No. 1:23cv3094, 2024 WL 2077551, at *7 (D.D.C. May 9, 2024) (holding that "[consular officials] ha[ve] a discrete, nondiscretionary [duty] to adjudicate visa applications" under 22 C.F.R. § 41.121(a)); Obad v. Department of State, No. 3:23cv409, 2024 WL 412758, at *4 (S.D. Miss. Jan. 17, 2024) ("find[ing] that the consular officer has a clear, mandatory, non-discretionary duty to adjudicate — either issue or refuse [the plaintiff's] visa — within a reasonable time" (citing, inter alia, 22 C.F.R. § 42.81(a))); Alwan v. Risch, No. 2:18cv73, 2019 WL 1427909, at *3

(S.D. Ohio Mar. 29, 2019) (ruling that "the [d]efendant[-officials] ha[d] a nondiscretionary, ministerial duty to . . . issue or refuse the visa" under INA and its related regulations (internal quotation marks omitted)); <u>American Acad. of Religion v. Chertoff</u>, 463 F. Supp. 2d 400, 421 (S.D.N.Y. 2006) (rejecting the government's argument that the court lacked jurisdiction because the government "confus[ed] its discretion over how it resolves the [visa] applications with its discretion over whether it resolves them" (internal brackets and ellipses omitted)).[4]

However, that conclusion does not complete the jurisdictional inquiry. The Court additionally must determine whether Defendants'

---

4 A number of cases cited by Defendants in opposition to this position (<u>see</u> Docket Entry 9 at 2-4) fail to refer to INA regulations and instead focus on 8 U.S.C. Section 1202(b) and 5 U.S.C. Section 555. <u>See, e.g.</u>, <u>Ali v. United States Dep't of State</u>, 676 F. Supp. 3d 460, 470 (E.D.N.C. 2023) (holding that "Section 555(b) merely restates a principle of good administration," such that "the court does not have jurisdiction . . . because [Section] 1202(b) and [Section] 555(b) do not create specific, non-discretionary duties" (internal quotation marks omitted)); <u>Babamuradova v. Blinken</u>, 633 F. Supp. 3d 1, 15-16 (D.D.C. 2022) (holding that Section 1202(b) "cabins the State Department's discretion as to who may review and adjudicate immigrant visa applications; it does not mandate that all applications actually be adjudicated" thus concluding that "[Section] 1202(b) [does not] mandate some form of adjudication of . . . [visa] applications"). Further, other cases cited by Defendants (<u>see</u> Docket Entry 9 at 2-4) present facts distinct from those alleged in the Complaint; for example, in one of the cited cases, the plaintiffs had not yet "personally appeared before a consular officer" for the visa interview, <u>Mueller v. Blinken</u>, 682 F. Supp. 3d 528, 537 (E.D. Va. 2023) (internal quotation marks and brackets omitted), whereas Plaintiff's husband completed his consular interview (<u>see</u> Docket Entry 1 at 4 ("In March 2023, Plaintiff's husband . . . was interviewed by the U.S. Consulate General in Guangzhong in connection with the case.")).

treatment of Plaintiff's husband's visa, i.e., issuing a refusal for administrative processing under Section 221(g), satisfies their nondiscretionary duty. According to the Complaint, Plaintiff's "husband's visa application remains pending since the petition was filed in 2022. . . . [And] Defendants[ thus have] fail[ed] to adjudicate Plaintiff's [husband's] visa application . . . ." (Docket Entry 1 at 2.) That position ignores the fact (alleged in the Complaint) that, "[a]fter the [consular] interview, [Plaintiff's husband] learned that this case was placed in administrative processing pursuant to [INA Section] 221(g)." (Id. at 4; see also id. at 5 (describing action taken to "place[] an application into a status called 'administrative processing'" as "[a] 'refusal' under INA [Section] 221(g)").) Based on that circumstance, Defendants contend (A) that, "[a]t the conclusion of the interview, the consular officer issued letters to [Plaintiff's husband] indicating that his visa application required administrative processing and that the letter constituted a denial of his visa under Section 221(g) of the [INA]," as well as (B) that "[his] visa remains refused." (Docket Entry 6 at 2.)

Neither Defendants nor Plaintiff provided a copy of the refusal/administrative processing letter(s) to the Court. Defendants rely on a Declaration from Justin Leone, an attorney adviser in the Office of the Assistant Legal Adviser for Consular Affairs. (Docket Entry 6 at 2; see also Docket Entry 6-1 at 1-2

9

(hereinafter the "Leone Declaration").) Generally, "[the Court's] evaluation is . . . limited to a review of the allegations of the [C]omplaint itself." Goines v. Valley Cmty. Servs. Bd., 822 F.3d 159, 165-66 (4th Cir. 2016). The Court "also consider[s] documents that are explicitly incorporated into the [C]omplaint by reference and those attached to the [C]omplaint as exhibits." Id. (internal citations omitted). Further, the Court "may also consider documents attached . . . to the motion to dismiss, so long as they are integral to the [C]omplaint and authentic." Sahoo v. Gleaton, No. 5:16cv153, 2017 WL 1102623, at *1 n.3 (E.D.N.C. Mar. 23, 2017).

In this case, the Complaint does not incorporate the Leone Declaration. (See Docket Entry 1 at 1-8.) In fact, Mr. Leone likely wrote and signed the declaration as a result of Plaintiff's Complaint. (See Docket Entry 6-1 at 2 (noting "[d]igitally signed by Justin M Leone [on] 2024.02.01"); see also Docket Entry 1 at 8 (stating that Plaintiff "submitted [Complaint] on . . . November 12, 2023).) Additonally, Plaintiff's claims "do not turn on, nor are they otherwise based on, statements contained in the [Leone Declaration]." Goines, 822 F.3d at 166; see also Sira v. Morton, 380 F.3d 57, 67 (2d Cir. 2004) ("Limited quotation from or reference to documents that may constitute relevant evidence in a case is not enough to incorporate those documents . . . ." (emphasis added)). Accordingly, the Leone Declaration "should not [be] considered by [the C]ourt." Goines, 822 F.3d at 166.

10

Plaintiff, for her part, attached two exhibits to her response to the instant Motion. (<u>See</u> Docket Entry 8-1, 8-2.) The first exhibit includes copies of emails sent by the consular office in Guangzhou (<u>see</u> Docket Entry 8-1 at 2-4), as well as SnapChat screenshots of a "CCP/Administrative Processing 221G Sheet" (<u>id.</u> at 5-6). Plaintiff's second exhibit contains "[c]orrespondence [between Plaintiff and] Congresswoman Kathy Manning." (Docket Entry 8-2 at 1; <u>see also</u> <u>id.</u> at 2.) Plaintiff attached neither exhibit to the Complaint (<u>see</u> Docket Entry 1 at 1-8), leaving only the question of whether Plaintiff "expressly incorporated," <u>Goines</u>, 822 F.3d at 166, the exhibits into the Complaint or whether the exhibits qualify as "integral to the Complaint," <u>id.</u>

Exhibit 8-1 includes various emails from the consulate general in Guangzhou to Plaintiff's husband stating that "[the] application is currently under administrative processing" and that, "[o]nce the administrative processing has been completed, [the consular office] will notify [him] of the next steps." (Docket Entry 8-1 at 3; <u>see also</u> <u>id.</u> at 2 (same), 4 (same).) The Complaint does not expressly incorporate these emails. (<u>See</u> Docket Entry 1 at 1-8.) Further, communications, after the placement of the visa application into administrative processing under Section 221(g), have no bearing on the legal significance of the prior action, and thus fail to qualify as "integral to the Complaint," <u>Goines</u>, 822 F.3d at 166. Exhibit 8-1 also contains SnapChat screenshots from "Hamza Iftii"

11

of an "Administrative Processing 221G Sheet."  (Docket Entry 8-1 at 5-6.)  Again, Plaintiff failed to expressly incorporate these images into the Complaint (see Docket Entry 1 at 1-8) and, in fact, at no point in the Complaint mentioned any "Administrative Processing" forms provided by consular officials to Plaintiff or her husband (see id.).  In the same vein, the significance of the "Administrative Processing 221G Sheet" remains unclear, thus precluding its treatment as integral to Plaintiff's claims.

Next, although the Complaint references correspondence with Congresswoman Kathy Manning and states that "Plaintiff reached out to Congresswoman Kathy Manning . . . [and was] advised that the case had been placed in administrative processing" (Docket Entry 1 at 5), Exhibit 8-2 only contains Plaintiff's inquiry to the Congresswoman and the response email from an office intern asking for further information (see Docket Entry 8-2 at 2).  Those emails do not change the analysis that follows.

Turning back to the question of whether the disposition of Plaintiff's husband's visa application satisfied Defendants' duties, the Court should look first to the INA's implementing regulations. As noted earlier, "[w]hen a visa application has been properly completed and executed . . ., [a] consular officer must issue the visa, refuse the visa, or . . . discontinue granting the visa."  22 C.F.R. § 41.121(a); see also United States Dep't of State, Administrative Processing Information, at

12

https://travel.state.gov/content/travel/en/us-visas/visa-information-resources/administrative-processing-information.html (last accessed July 16, 2024) ("There are only two possible outcomes for complete and executed U.S. visa applications. The consular officer will either issue or refuse the visa." (parenthetical omitted)).

The regulations require refusal when "the consular officer knows or has reason to believe that [the applicant] is ineligible to receive a visa . . . under Section 1182 of this title, or any other provision of law." 8 U.S.C. § 1201(g).[5] When refusing a visa application, a consular officer "must inform the alien of the grounds of ineligibility and whether there is, in law or regulations, a mechanism to overcome the refusal." 22 C.F.R. § 41.121 (b)(1) (parenthetical omitted). "Nonimmigrant visa refusals must be based on legal grounds such as . . . INA [Section] 221(g)." 22 C.F.R. § 41.121(a).

In some cases,

> refused visa applications warrant further administrative processing. Upon completion of the case-specific administrative processing, the consular officer might conclude that an applicant is now qualified for the visa . . . [or] conclude that the applicant remains ineligible for a visa. . . . When an applicant is refused under [Section] 221(g), it means the consular officer determined that the applicant was not eligible for a visa after completing and executing the visa application and any required interview. It is possible that a consular officer will reconsider a visa application refused under [Section] 221(g) at a later

---

5   "Section 221(g) of the [INA] is codified at 8 U.S.C. § 1201(g)." Obad, 2024 WL 412758, at *3 n.4.

13

date, based on additional information or upon the resolution of administrative processing, and determine that the applicant is eligible. . . . If an application was <u>refused</u> and a consular officer indicates <u>administrative processing</u> is required, processing times can vary based on individual circumstances.

United States Dep't of State, Administrative Processing Information, at https://travel.state.gov/content/travel/en/us-visas/visa-information-resources/administrative-processing-information.html (last accessed July 16, 2024) (emphasis added).[6]

To recap, per the INA's regulations, consular officers bear a duty to grant or refuse completed visa applications and a duty to justify refusals on "legal grounds, such as . . . INA [Section] 221(g)." 22 C.F.R. § 41.121(a) "Conspicuously absent from this provision is any requirement that the refusal be final or ineligible for discretionary re-adjudication or administrative processing." <u>Yaghoubnezhad</u>, 2024 WL 2077551, at *8 (internal quotation marks omitted).

In this case, "USCIS approved Plaintiff's husband's visa petition" and "[he] was interviewed by the U.S. Consulate General

---

[6] Further, the State Department's Foreign Affairs Manual ("FAM") provides that "[a] refusal under INA [Section] 221(g) is, legally, a refusal on a visa application, even if that refusal is eventually overcome." 9 FAM § 302.1-8(B)(c); <u>see also</u> 9 FAM § 403.10-3(A)(2)(2)(d) (describing Section 221(g) refusal as "denial of a visa"). However, "[a] refusal of a visa application under [Section 221(g)] does not bar reconsideration of the application upon compliance by the applicant with the requirements of [the] INA and the implementing regulations or consideration of a later application submitted by the same applicant." 9 FAM § 302.1-8(B)(b).

in Guangzhong[, China] in connection with the case." (Docket Entry 1 at 4.) Only "[a]fter the interview [did Plaintiff's husband] learn[] that this case was placed in administrative processing pursuant to [INA Section] 221(g)." (Id.; see also id. at 5 (characterizing that action as "'refusal' under INA [Section] 221(g)").) Plaintiff's argument that Defendants must take particular actions after refusing a visa application for administrative processing under Section 221(g) in order to discharge their non-discretionary duty to grant or to refuse a visa application (see Docket Entry 8 at 12 (contending that Plaintiff suffered "deprivation of a final decision on her husband's application within a reasonable time" (emphasis added))) requires "the Court to impose a duty that has no basis in the INA or its implementing regulations," Yaghoubnezhad, 2024 WL 2077551, at *9.

Put another way, "[i]n refusing Plaintiff['s husband's] application[] under [Section] 221(g) after [his] interview[] with consular officers, [Defendants] complied with the regulations governing visa adjudications. [Defendants] thereby discharged [their] nondiscretionary duty." Id. at *8; accord Denisova v. Mayorkas, No. 2:23cv1902, 2024 WL 2043664, at *3-4 (W.D. Pa. May 8, 2024); see also Ameen v. United States Dep't of State, No. 1:23cv1397, 2024 WL 3416264, at *3 (E.D. Va. July 15, 2024) ("Here, [the plaintiff] does not raise any mandatory procedures which [the d]efendants have failed to follow. To the contrary, an initial

15

refusal followed by further inquiry is consistent with visa statutes and regulations. That is what happened here. [The applicant's] visa application was refused at the time of his interview, and he submitted additional information to the consular officer, presumably in order to overcome the refusal. Such a procedure is consistent with federal regulations and is within the consular officer's discretion." (internal citations, footnote, and quotation marks omitted)); <u>Conley v. United States Dep't of State</u>, Civ. Action No. 24-10131, 2024 WL 1640074, at *4-5 (D. Mass. Apr. 16, 2024) ("Several courts have determined that . . . a visa application['s] refus[al] subject to further administrative processing is not a final decision sufficient to moot a claim for unreasonable delay. Other courts, however, have determined that[,] once action has been taken, there is no longer a viable claim of unreasonable delay. On balance, the [c]ourt is persuaded that the consular officer's refusal of a visa application is a final decision for the purposes of an unreasonable-delay claim under the APA. . . . While [such a] denial might be subject to reconsideration in the future, that alone does not support a viable claim for unreasonable delay; indeed, almost any agency decision could be reconsidered or revised. . . . In short, a denial is final unless and until it has been overturned. Because [the] defendants have acted on the visa application, they have not failed

16

to take any legally required action . . . ." (internal citations, dash, and quotation marks omitted)).

Various courts have come to the opposite conclusion and found the duty to grant or to refuse a visa application unsatisfied in cases where consular officers refused a visa for administrative processing under Section 221(g). A number of such cases rely almost exclusively on Section 555(b) without addressing the relevant INA regulations. See, e.g., Ali v. Ordeman, No. 2:23cv2822, 2024 WL 2274912, at *2-3 (E.D. Cal. May 20, 2024) (holding that "[a] non-discretionary duty is upon the Government under [] Section 555 . . . [to] adjudicat[e ] immigrant visa applications" without explaining why Section 221(g) refusal does not qualify as adjudication). Yet, when determining the agency's specific, non-discretionary duty, "the general directive of Section 555(b) is a far cry from the discrete agency action that courts require," Hi-Tech Pharmacal Co. V. FDA, 587 F. Supp. 2d 1, 9 (D.D.C. 2008) (internal quotation marks omitted).[7]

In sum, without any statute or regulation requiring additional, discrete action by Defendants after the refusal of a

---

    7 Other such cases rest on the assumption that courts possess jurisdiction to review Section 221(g) refusals for unreasonable delay because they remain subject to reconsideration. See, e.g., Anid Infosoft LLC v. Blinken, Civ. Action No. 1:22cv4721, 2023 WL 7312488, at *4 (N.D. Ga. Nov. 3, 2023) (holding that "Congress has created a nondiscretionary duty to make a final determination on nonimmigrant visa applications" (emphasis added)). "[A]s explained above, this assumption is flawed." Yaghoubnezhad, 2024 WL 2077551, at *9.

17

visa application for administrative processing under Section 221(g), the Court cannot compel further action on Plaintiff's husband's visa application.  As a result, the Court lacks subject matter jurisdiction.

<strong><u>CONCLUSION</u></strong>

For the reasons stated above, Plaintiff has failed to establish subject-matter jurisdiction, warranting dismissal under Rule 12(b)(1).

**IT IS THEREFORE RECOMMENDED** that the instant Motion (Docket Entry 5) be granted, and that the Complaint (Docket Entry 1) be dismissed for lack of subject matter jurisdiction.

/s/ L. Patrick Auld
**L. Patrick Auld**
**United States Magistrate Judge**

July 23, 2024